FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

*ORIGINAL*

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

2019 JUL 15  PM 12: 36

DEPUTY CLERK _____

SEALED

**UNITED STATES OF AMERICA** *ex rel.*
**VALERIE BOYD-HOLSINGER,**
**CASSANDRA MATTHEWS,** and
**JULIE JENSON,**

Plaintiffs,

v.

**PELOTON COLLEGE, LLC,**
**CARLOS G. STRENGTH,**
**ARTHUR RODRIGUEZ,**
**LARRY VAN LOON,**
**LARRY A. JOBE,** and
**LARRY A. JOBE & ASSOCIATES, INC.,**

Defendants.

**3-19CV-1686L**

NO. _____

**COMPLAINT**

**FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs and *qui tam* Relators Valerie Boyd-Holsinger, Cassandra Matthews, and Julie

Jenson, by and through their undersigned counsel Brown, LLC, and Dean Omar Branham Shirley,

LLP, allege of personal knowledge as to their own observations and actions, and on information

and belief as to all else, as follows:

**I.**
## PRELIMINARY STATEMENT

1.    This is a *qui tam* action on behalf of the United States of America under the federal

False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"), arising from the making and use of false

or fraudulent statements and records, and the improper payment of commissions, by Defendants

Peloton College, LLC ("Peloton"), Carlos G. Strength, Arthur Rodriguez, Larry Van Loon, Larry

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

A. Jobe (the "Individual Defendants"), and Larry A. Jobe & Associates, Inc. (collectively with Peloton, "Defendants").

2.      At all times relevant herein, Peloton, a for-profit college with locations in Dallas and Arlington, Texas, has been the recipient of funding under Title IV of the Higher Education Act of 1965 ("Title IV Funding") from the federal Department of Education.

3.      At all times relevant herein, Peloton received Title IV Funding under a Program Participation Agreement with the Department of Education, which required the school to enroll only qualified students, and to accurately report, *inter alia*, students' enrollment status and academic progress, placement and retention rates, and utilization of federal funds. However:

    a.  During the statutory period, Peloton enrolled, and then sought and received federal financial aid for, certain students who were not qualified under 20 U.S.C. § 1002 and 34 C.F.R. § 668.32(e). In doing so, Defendants created and/or used false records and statements.

    b.  Moreover, in order to continue receiving Title IV Funding for these and other students, Peloton created and used false records and statements to make it appear that the students were enrolled and eligible to receive funding when in fact they were not.

4.      Peloton also paid certain administrative employees bonuses based on enrollment numbers, violating 34 C.F.R. § 668.14(b)(22) and thereby also violating its Program Participation Agreement.

5.      The Individual Defendants took all of these actions, and/or directed employees to take them, in their roles as managers and principals of Peloton. Defendant Larry A. Jobe & Associates, Inc., received the Title IV Funding on behalf of Peloton.

6.      In order to maintain its accreditation and thus its eligibility to receive Title IV Funding, Peloton certified that it was in compliance with its Program Participation Agreement when in fact it was not, because of the conduct described above.

2

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

7.      Because of this non-compliance, the school was ineligible to receive Title IV Funding at all times during the statutory period.

8.      As a direct result of Defendants' fraud, Peloton has received, during the statutory period, millions of dollars from the United States to which it was not entitled, and has improperly retained millions of dollars which it was obligated to refund to the United States.

9.      Each Relator also brings an individual claim for retaliation she suffered, in violation of 31 U.S.C. § 3730(h), as a result of her efforts to stop the fraud described herein.

10.     This Complaint has been filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). It will not be served on Defendants unless and until the Court so orders.

11.     A copy of the Complaint, along with written disclosure of substantially all material evidence and information that Relators possess, has been served contemporaneously herewith on the Attorney General of the United States and on the United States Attorney for the Northern District of Texas, pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

## II.
## NO PUBLIC DISCLOSURE;
## DIRECT AND INDEPENDENT KNOWLEDGE
## OF THE VIOLATIONS ALLEGED HEREIN

12.     There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" alleged in this Complaint.

13.     Relators make the allegations in this Complaint based on their own personal knowledge, experience, and observations.

14.     Relators are the original source of the information on which any allegation herein might be based, have direct and independent knowledge of such information, and have voluntarily disclosed such information to the United States before filing this action.

3

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

### III.
### THE PARTIES

**A.      Plaintiff the United States of America**

15.     The United States brings this action by and through Relators Boyd-Holsinger, Matthews, and Jenson. At all times relevant to this Complaint, the United States, acting through the Department of Education, has provided funding to Peloton and its students pursuant to Title IV of the Higher Education Act.

**B.      Relators Valerie Boyd-Holsinger, Cassandra Matthews, and Julie Jenson**

16.     Relator Valerie Boyd-Holsinger is, and all times relevant herein has been, a resident of Dallas County, Texas, which is within this judicial district. Ms. Boyd-Holsinger has her Ph.D. (ABD) in Health Administration from Capella University and an MBA with a concentration in Healthcare Management from the University of Phoenix. For approximately the past ten years, she has been a professor and instructor, and has held managerial positions at various postsecondary education institutions.

17.     Ms. Boyd-Holsinger has personal knowledge of Defendants' fraud, and she attempted to put a stop to it by complaining about and reporting to Defendants the unlawful acts described herein. In response, Defendants took no corrective action, but rather discriminated and retaliated against Relator. Ms. Boyd-Holsinger was eventually constructively discharged by Defendants for her complaints about, and refusal to participate in, the unlawful practices described.

18.     Relator Cassandra Matthews is, and at all times relevant herein has been, a resident of Dallas County, Texas, which is within this judicial district. For approximately the past ten years, Ms. Matthews has been a compliance officer and registrar for various postsecondary education institutions.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

19.     Ms. Matthews has personal knowledge of Defendants' fraud, and she attempted to put a stop to it while employed by Defendants by complaining about and reporting to Defendants the unlawful acts described herein. In response, Defendants took no corrective action, but rather discriminated and retaliated against Relator. Ms. Matthews was eventually constructively discharged by Defendants for her complaints about, and refusal to participate in, the unlawful practices described.

20.     Relator Julie Jenson is, and at all times relevant herein has been, a resident of Collin County, Texas, which is within this judicial district. For approximately the past ten years, Ms. Jenson has been a financial aid officer for various postsecondary education institutions.

21.     Ms. Jenson has personal knowledge of Defendants' fraud, and she attempted to put a stop to it while employed by Defendants by complaining about and reporting to Defendants the unlawful acts described herein. In response, Defendants took no corrective action, but rather discriminated and retaliated against Relator. Ms. Jenson was eventually constructively discharged by Defendants for her complaints about, and refusal to participate in, the unlawful practices described.

## C.     Defendants

22.     Defendant Peloton College, LLC is a limited liability company formed and operating under the laws of the State of Texas, with a mailing address of 8150 N. Central Expressway, Suite M2240, Dallas, Texas, 75206-1993, which is within this judicial district. *See* **Exhibit A** (entry from the Texas Secretary of State Business Entity online database).

23.     Defendant Carlos "Carli" G. Strength is, and/or at all times relevant herein was, the Chief Executive Officer and a Manager of Peloton. *See* **Exhibit B** (Peloton's Public

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Information Report for 2018).[1] On information and belief, Strength is a resident of this judicial district.

24.     Defendant Arthur Rodriquez is, and/or at all times relevant herein was, the Chief Administrative Officer for Peloton. On information and belief, he is a resident of this judicial district.

25.     Defendant Larry Van Loon is, and/or at all times relevant herein was, a Manager of Peloton. Van Loon has been President of Peloton since approximately January 2018. On information and belief, he is a resident of this judicial district.

26.     Defendant Larry A. Jobe is, and/or at all times relevant herein was, a founder and Board Member of Peloton, as well as the company's registered agent. Jobe is also the Director and President of Larry A. Jobe & Associates, Inc.; a CPA; and a Class I director of Mannatech, Incorporated.[2] On information and belief, he is a resident of this judicial district.

27.     Defendant Larry A. Jobe & Associates, Inc. is, and/or at all times relevant herein was, a Manager of Defendant Peloton. *See* **Exhibit B**. Larry A. Jobe & Associates, Inc. is a corporation formed and operating under the laws of the State of Texas, with a mailing address of 8150 N. Central Expressway, Suite M2240, Dallas, Texas, 75206-1993 – the same mailing address as Peloton. *See* **Exhibit C** (Larry A. Jobe & Associates, Inc.'s Franchise Search Results and Public Information Report for 2018).

---

[1] On information and belief, prior to joining Peloton, Strength was an officer for ATI Enterprises, Inc., a company that operated for-profit schools in Texas, Florida, New Mexico, and Oklahoma. In 2013, ATI paid a settlement of $3.7 million for submitting false claims for federal student financial aid. *See* Dept. of Justice, "Texas-Based School Chain to Pay Government $3.7 Million for Submitting False Claims for Federal Student Financial Aid" (Aug. 22, 2013), *available at* https://www.justice.gov/opa/pr/texas-based-school-chain-pay-government-37-million-submitting-false-claims-federal-student (last accessed May 19, 2019). On information and belief, Peloton Manager Arthur D. Johnson (under the name Arthur E. Benjamin) was also part of ATI's settlement agreement with the United States. *Id.*
[2] https://ir.mannatech.com/board-member/larry-jobe (last accessed May 25, 2019).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## IV.
## JURISDICTION AND VENUE

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a), (b). This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a)-(b), because Defendants are found, reside in, and/or transact business in this judicial district.

29.     Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C § 3732(a), (b), as Defendants transact business and have committed the acts complained of herein in this judicial district.

## V.
## THE STATUTORY FRAMEWORK

A.     **The Higher Education Act of 1965**

30.     The Higher Education Act of 1965 (the "HEA") was enacted by Congress to create more opportunities for middle- and lower-income families to attend higher education institutions, and to assist smaller colleges and universities to compete with larger, more established institutions.[3]

31.     Title IV of the HEA "authorize[s] a broad array of programs and provisions to assist students and their families in gaining access to and financing a postsecondary education. The programs authorized under this title are the primary sources of federal aid to support postsecondary education."[4]

32.     Title IV Funding programs include, but are not limited to: (a) federal grants, such as the Pell Grants and the TRIO Programs (providing need-based assistance that need not be

---

[3] Nation TRIO Clearinghouse, "The Early History of the Higher Education Act of 1965," Council for Opportunity in Education (Feb. 2003), *available at* http://www.pellinstitute.org/downloads/trio_clearinghouse-The_Early_History_of_the_HEA_of_1965.pdf) (last accessed May 19, 2019).
[4] Alexandra Hegji, "The Higher Education Act (HEA): A Primer," Congressional Research Service, at 1 (Feb. 8, 2016), *available at* https://fas.org/sgp/crs/misc/R43351.pdf (last accessed May 18, 2019).

7

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

repaid); (b) loans, such as the Family Education Loan Program, and Subsidized/Unsubsidized Stafford Loans and PLUS loans; and (c) Campus-Based Programs (under which Title IV Funding is given directly to the institution), such as Work-Study, Supplemental Educational Opportunity Grants, and Campus-Based Federal Perkins Loans.[5]

33.    In order to participate in Title IV Funding, both institutions and students must comply with the applicable portions of the HEA.

### 1.  Student Eligibility

34.    To be eligible for enrollment at Peloton and to receive Title IV financial aid,[6] a student must, as pertinent here,

    a. have a high school diploma or equivalent (e.g., a General Education Diploma or GED)[7]; or

    b. pass an "ability-to-benefit" or ATB test[8] and be concurrently enrolled in the school's regular academic program and in a "career pathways" program, which requires the satisfactory completion of 225 clock hours of classwork applicable toward a degree or certificate program offered by the institution.[9]

35.    The Government Accountability Office has identified ATB testing generally as vulnerable to fraud. For example, as reported by the GAO in 2009:

> [I]n 2008 we sent two GAO analysts who posed as prospective students to a local branch of a publicly traded proprietary school to deliberately flunk an ATB test. Each analyst was sent separately to the school and on both occasions, the

---

[5] *Id.* at 9-19.

[6] *See* Peloton College 2019-2020 Catalog, Vol. 4, Version 1 (published February 5, 2019) ("Catalog"), *available at* https://tinyurl.com/Peloton-2019-2020-catalog, at 9-10 (last accessed July 6, 2019).

[7] 34 U.S.C. § 668.32(e)(1).

[8] 34 U.S.C. § 668.32(e)(2). The ATB test, which measures whether a student has the basic math and English skills needed to benefit from higher education and succeed in school. "The ATB credential came into existence in 1976 with the passage of the Education Amendments of 1976 that (among other things) expanded eligibility for federal financial assistance to persons without high school degrees if they had the "ability to benefit" from postsecondary training. *See* Education Amendments of 1976, Pub. L. No. 94-482, 90 Stat. 2081 (1976). The requirements for recognized ATB examinations are determined by Department of Education regulations." *U.S. ex rel. Munoz v. Computer Sys. Inst.*, No. 11 C 7899, 2015 U.S. Dist. LEXIS 84445, *17-18 (N.D. Ill. June 30, 2015) (citing 34 C.F.R. §§ 668.141 *et seq.* and 64 F.R. 24246-01). The test must be approved by the Department of Education and independently administered.

[9] 34 U.S.C. § 668.32(e)(5); *see also* 2018-2019 Federal Student Aid Handbook ("FSA Handbook"), Vol. 1 (Student Eligibility 2018–19), Ch. 1 (School Determined Requirements), *available at* https://tinyurl.com/FSA-Vol1-Ch1, at 8, 11-14 (last accessed July 4, 2019). "Career pathways" programs are further defined in Section 484(d) of the HEA.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

> independent test administrator gave them and all the test takers in the room –
> about 20 in total – answers to some of the test questions. We later obtained copies
> of the analysts' test forms and found that they had been tampered with – their
> actual answers had been crossed out and changed – to ensure the analysts passed
> and would become eligible to receive Title IV funds. ... [P]ersonnel at a
> proprietary school in Louisiana [ ] changed the failing test scores of prospective
> students to allow 80 individuals to pass and inappropriately qualify for federal
> funding. Likewise, in two separate New York investigations in which multiple
> undercover operatives were sent to flunk ATB tests at local proprietary schools,
> test answers were changed by either the test administrator or school officials to
> ensure all people posing as students passed and gained access to federal aid.

Government Accountability Office, "Proprietary Schools: Stronger Department of Education

Oversight Needed to Help Ensure Only Eligible Students Receive Federal Student Aid," GAO-

09-600 (Aug. 2009),[10] at 22-23.

36.     As the GAO notes, "When ATB tests are not properly administered ...

prospective students who are academically unqualified are more likely to be admitted to a school

and receive federal student aid. Such students are at greater risk of dropping out of school,

incurring substantial debt, and defaulting on their federal student loans." *Id.* at 23.

### 2.  School Eligibility

37.     For a proprietary, for-profit institution of higher education like Peloton, a basic

requirement for participation in Title IV Funding is that the school must, with certain narrow

exceptions not pertinent here, admit only students who (a) have a high school diploma or GED, or

(b) pass an ATB test approved by the Department of Education, and are concurrently enrolled in a

"career pathways" program, as described *supra*.[11]

38.     Peloton allows students to meet the last of these requirements by taking an online

class.[12]

---

[10] *Available at* https://www.gao.gov/new.items/d09600.pdf (last accessed July 4, 2019).
[11] Section 101 of the HEA (20 U.S.C. § 1001(a)(1)), made applicable to proprietary institutions by Section 102 (20 U.S.C. § 1002(b)(1)(B)); *id.* § 1002(b)(2).
[12] Currently Peloton uses classes offered online by Khan Academy. *See* https://www.khanacademy.org/about.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

39.     A school must also meet the requirements of the Department of Education's "program integrity triad": (a) state authorization, (b) accreditation by an agency recognized by the Department of Education, and (c) eligibility and certification by the Department of Education.[13]

40.     In order for an institution to be considered state-authorized under the triad, (a) the state must authorize it by name to operate post-secondary educational programs, and (b) the state must have a process to review and address complaints concerning educational institutions.[14]

41.     In order to meet the second prong of the triad, an institution must apply for and ultimately be awarded accreditation by a Department of Education-recognized agency.[15]

42.     Finally, under the triad's third prong, the Department of Education must evaluate and certify the institution's eligibility and accreditation, as well as its "financial responsibility" and "administrative capability."[16]

43.     An institution will be considered "financially responsible" if it is able "to provide the services described in its official publications, to administer the Title IV programs in which it participates, and to meet all of its financial obligations."[17] To demonstrate "administrative capability," an institution must show that it has systems and staff in place to administer Title IV Funding and to identify and resolve discrepancies.[18]

44.     In addition to the ability to administer Title IV Funding, an institution must have standards to measure its students' satisfactory academic progress ("SAP") – generally, a minimum grade point average and a maximum time within which to complete the program.[19] *See*

---

[13] "Institutional Eligibility for Participation in Title IV Student Financial Aid Programs," Congressional Research Service, at 10 (Feb. 14, 2019) ("Institutional Eligibility"), *available at* https://fas.org/sgp/crs/misc/R43159.pdf (last accessed May 18, 2019).
[14] *Id.* at 10-11.
[15] *Id.* at 11-14.
[16] *Id.* at 15.
[17] *Id.*; *see also* 34 C.F.R. § 668.15.
[18] Institutional Eligibility, at 16; *see also* 34 C.F.R. § 668.16.
[19] 34 CFR § 668.34.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

**Exhibit D** (Peloton's Satisfactory Academic Progress Policy dated January 1, 2018). The school must require that students receiving Title IV Funding maintain SAP, and must certify to the Department of Education that they are doing so.

45.   Once an institution is certified by the Department of Education under the program integrity triad, it enters into a "Program Participation Agreement" in order to receive Title IV Funding. In that agreement, the institution certifies and agrees that, *inter alia*:

> (1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA ....;
>
> * * *
>
> (22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person ... who is engaged in any student recruitment or admission activity ....;
>
> * * *
>
> (24) It will comply with the requirements of § 668.22 [concerning the treatment of Title IV Funding when a student withdraws]; [and]
>
> (25) It is liable for all—
>
>> (i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and
>>
>> (ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make[.]

34 C.F.R. § 668.14(b).[20]

46.   The government's payments of Title IV funds based on the claims/applications submitted by (or caused to be submitted by) Peloton and its students are conditioned on the school's certifications of compliance and its actual compliance with its Program Participation Agreement, and with applicable laws and regulations.

---

[20] The Program Participation Agreement expires in six years, unless a school "recertifies." *See* 34 CFR § 600.20(b).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## B.    The False Claims Act

47.    As pertinent here, the FCA establishes liability for an individual or entity that:

    a.    "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A);

    b.    "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* at § 3729(a)(l)(B), or

    c.    "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money … to the Government, or knowingly conceals or knowingly and improperly avoids or decreases" such an obligation, *id.* at § 3729(a)(l)(G).

48.    "Knowing," within the meaning of the FCA, is defined to include reckless disregard and deliberate indifference as to the truth or falsity of information. *Id.* at § 3729(b)(l)(A).

49.    The FCA provides for treble damages and the assessment of a civil penalty for each violation or each false claim. *Id.* at § 3729(a)(1)(G).[21]

50.    The FCA also provides for payment of a percentage of the United States' recovery to private individuals, known as "relators," who bring suit on behalf of the government. *See id.* at § 3730(d).

51.    The FCA also prohibits retaliation against an individual for reporting or attempting to stop violations of the FCA. *Id.* at § 3730(h)(1). Those who are subjected to such retaliation are entitled to reinstatement, two times backpay, interest, and special damages. *Id.* at § 3730(h)(2).

---

[21] 31 U.S.C. § 3729(a)(1)(G) provides for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410). The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. 2461 note, substituted a different statutory formula for calculating inflation adjustments. Following that formula, on January 29, 2018, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after January 29, 2018, the minimum penalty is $11,181 and the maximum is $22,363. *See* 28 C.F.R. § 85.5; 83 Fed .Reg. 3945 (January 29, 2018). As of July 1, 2019, the Department of Justice had not published an adjustment for 2019.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

# VI.
## STATEMENT OF FACTS

**A.   Background**

52.   Peloton was established in 2005 as Lawyers Assistant School of Dallas.

53.   Peloton is currently accredited by the Commission of the Council on Occupational Education ("COE") to award diplomas and Associate of Applied Science degrees.[22] The school is also approved and regulated by the Career Schools and Colleges Program of the Texas Workforce Commission ("TWC").[23]

54.   At all times relevant herein, Peloton has participated in various Title IV grant and loan programs, and has offered Title IV Funding to students in its academic programs. When a student is awarded financial aid through a particular Title IV program, the funds are transferred by the Department of Education to Defendant Larry A. Jobe & Associates, Inc., on behalf of Peloton, to be appropriately applied.

55.   Relator Boyd-Holsinger joined Peloton in December, 2013 as an Instructor, and eventually worked her way up to become Chief Administrative Officer of the school's Dallas Campus, and President of the Arlington Campus.

56.   Relator Matthews joined Peloton in September, 2017 as the Corporate Registrar. Relator Jenson joined in December, 2017 as the Director of Financial Aid.

57.   Defendants hired all three Relators with the intent and expectation that they would participate in, or at least acquiesce in, Defendants' fraudulent schemes.

---

[22] List of Accredited Institutions, Commission of the Council on Occupational Education, *available at* https://council.org/membership/ (search "Peloton College").
[23] *Id.*

13

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**B.      Defendants' Fraud**

58.      Throughout the statutory period Defendants engaged in various schemes to defraud both the Department of Education and individual students. The most aggressive of these involved the fraudulent alteration of attendance records, withdrawal dates, and placement and retention records. Defendants also enrolled students based on ATB tests that were fraudulently administered, and paid bonuses to admissions staff for enrollments. All of these actions violated Peloton's Program Participation Agreement with the Department of Education, and thereby made Peloton ineligible to receive Title IV Funding.

**1.      Defendants Fraudulently Retained Payments
           That Should Have Been Refunded to the Department of Education.**

59.      Under its Program Participation Agreement, Peloton was obligated to ensure that every student who received Title IV Funding was meeting SAP standards – including, *inter alia*, requirements for minimum grade point averages, attendance, and maximum program length – and to refund to the Department of Education the "unearned"[24] Title IV Funding of any student who did not meet those standards or withdrew from the school (either affirmatively or constructively through abandonment).

60.      The Individual Defendants purposefully altered or directed subordinates to alter student attendance records, withdrawal dates, and placement and retention information to make it appear that the school was in compliance with its Program Participation Agreement, and thus eligible to receive Title IV Funding.

61.      When a Peloton student withdrew from a class or from his/her entire program, or requested a leave of absence, a Student Status Change Form was generated and sent to the

---

[24] Pursuant to 34 C.F.R. § 668.22(e), to determine the amount of funds unearned, institutions must determine the amount of funds the student earned prior to withdrawal based upon the amount of time and/or credits the student completed prior to withdrawal and subtract that from the total amount disbursed on behalf of the student.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

school's Registrar. From approximately September 2017 until approximately September 2018, Relator Matthews was Peloton's Registrar.

62.     As Registrar, Matthews reviewed attendance records and pending Student Status Change Forms on a weekly basis with the President of the Dallas Campus, Gary Dagampat. Matthews would inform Dagampat as to which students needed to be considered "withdrawn" pursuant to the school's SAP policy, which would require Peloton to refund their unearned Title IV Funding to the Department of Education. However, Dagampat, acting at the direction of Defendants Strength and Rodriguez, would not allow Matthews to process withdrawals for such students. In addition, Dagampat instructed that students who had requested leaves of absence be directed to arbitrarily re-request them so that the school could avoid recording withdrawal dates for them.

63.     These two policies and practices had the effect of making it appear that students were attending classes and meeting SAP standards – and so were still eligible for Title IV Funding – even though they had actually withdrawn or taken leaves of absence.

64.     Defendant Van Loon was hired as Peloton's President in or around January 2018, and Van Loon continued Dagampat's policy of delaying and otherwise thwarting the processing of Student Status Change Forms. Van Loon also implemented a new policy, whereby the Financial Aid Department was directed to alter the records of students who had not formally requested status changes but whose attendance had fallen off. The Corporate Director of Financial Aid, Lorraine Stewart, personally directed Relator Matthews to alter the records of numerous such students, to make it appear that they were attending classes and meeting SAP standards.

65.     As a result of these policies – which violated federal laws and regulations, applicable accreditation standards, and the school's Program Participation Agreement –

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Defendants fraudulently received and retained Title IV funds they knew they were obligated to refund to the Department of Education. Defendants thereby violated § 3729(a)(l)(G) of the FCA.

### 2. Defendants Admitted and Retained Unqualified Students Solely in Order to Receive Their Associated Title IV Funding.

66.     Federal laws and regulations prohibit institutions like Peloton from admitting and retaining unqualified students who cannot complete the educational programs or who cannot benefit from the education provided. The law requires that only qualified students, capable of benefiting from a course of instruction, be admitted to and attend proprietary schools.[25] These requirements ensure that schools are not merely admitting "bodies" for the purpose of receiving Title IV Funding from the public coffers.

67.     On information and belief, Peloton knowingly violated these laws and regulations by:

> a. paying certain students to take admission and ATB tests on behalf of other, unqualified students to ensure the unqualified students – and thus, Peloton – would be able to obtain Title IV Funding;
>
> b. having unqualified staff administer the tests to ensure the fraud could be accomplished; and
>
> c. failing to require that "ATB students" attend and complete the required 225 hours of "career pathways" classwork; *see supra* ¶¶ 34, 37-38.

68.     On further information and belief, Peloton recruits homeless individuals to enroll by dangling the prospect of stipend checks, even though neither these individuals nor the school intends that they should continue as students. Once the individuals receive the stipend checks – and Peloton receives the Title IV Funding – the school encourages them to drop out.

69.     By purposefully admitting and retaining students who were not capable of (or had no intention of) completing the coursework or programs, Peloton violated federal laws and

---

[25] Section 101 of the HEA (20 U.S.C. § 1001(a)(1)), made applicable to proprietary institutions by Section 102 (20 U.S.C. § 1002(b)(1)(B)); *id.* § 1002(b)(2).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

regulations, applicable accreditation standards, and the school's Program Participation

Agreement, and was therefore, throughout the statutory period, ineligible to participate in Title IV

Funding. Each certification of compliance that Peloton made throughout the statutory period was

therefore false, and each claim or application for Title IV Funding was a violation of

§§ 3729(a)(l)(A) and (B) of the FCA.

### 3. Defendants Fraudulently Obtained Accreditation to Receive Title IV Funding.

70.     As noted *supra*, the Program Participation Agreement requires Defendants to

maintain accreditation with a nationally recognized accrediting agency.

71.     Prior to 2018, Peloton was accredited by the Accrediting Council for Independent

Colleges and Schools ("ACICS"). However, in or around the beginning of 2018, Peloton was at

risk of losing its accreditation due to its failure to meet ACICS standards. *See* **Exhibit E** (August

21, 2018 letter from Boyd-Holsinger to COE regarding Peloton's history with ACICS). It was in

this climate that Relator Jenson was hired as Director of Financial Aid.

72.     One of Jenson's first tasks was to get student files ready for ACICS's yearly audit,

including a sample set of twenty-five students who had "dropped" in 2017 and whose unearned

Title IV Funding had been refunded to the Department of Education, as required.

73.     With considerable difficulty and after a thorough search, Jenson ultimately located

twenty-five files that she thought could comprise this sample set. However, the ACICS auditor

found that in seven of those twenty-five files, unearned Title IV money had been refunded

unacceptably late.

74.     After learning of this, Van Loon "adjusted" attendance information in the school's

computer system. He then instructed Relator Jenson to update the students' hard-copy files with

the "correct" attendance information.

17

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

75.     Relator Jenson updated the files as instructed by Van Loon, but also saved the original "incorrect" attendance information in separate files, which she kept in her office. She also voiced her concerns to management, including Defendant Rodriguez. Rodriquez told her that the steps she was taking were "good enough," but he removed the files containing the original, factual attendance information to the school's legal office "for safekeeping." The "corrected" files were ultimately presented to and approved by TWC to obtain continued state accreditation.

76.     Around the same time, ACICS also began to raise concerns about Peloton's placement and retention rates, and in April 2018, ACICS withdrew the school's accreditation. *See* **Exhibit E**.

77.     Meanwhile, Peloton had obtained accreditation from COE, and so no longer needed ACICS. On October 18, 2018, the school abandoned its attempts to re-obtain ACICS accreditation. *See* **Exhibit F** (letter from Ms. Boyd-Holsinger to COE regarding Peloton's voluntarily withdrawal from ACICS).

78.     At approximately that same time, Relator Boyd-Holsinger was tasked with completing placement and retention reports to be sent to COE. The previous Director of Career Services, who had performed this task, had abruptly left Peloton right before these reports were due.

79.     Boyd-Holsinger completed the reports and submitted them to Rodriguez and Strength. Almost immediately, Strength emailed Boyd-Holsinger demanding to know why her numbers were "incorrect." When Boyd-Holsinger informed Strength that they were accurate he refused to believe her, and continued to email her about it.

80.     Finally, Strength telephoned Boyd-Holsinger. He asked what her "problem" was and told her that if those numbers were submitted, Peloton would be shut down.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

81.     Boyd-Holsinger refused to alter the numbers. However, Defendants were able to fraudulently alter them before they were submitted to COE and were thereby able to maintain Peloton's accreditation – and, consequently, its eligibility to receive and retain Title IV Funding.

82.     By fraudulently obtaining and maintaining its accreditation in this way, Peloton violated federal laws and regulations, applicable accreditation standards, and the school's Program Participation Agreement, and was therefore ineligible to participate in Title IV Funding. Each certification of compliance that Peloton made was therefore false, and each claim or application for Title IV Funding was a violation of §§ 3729(a)(l)(A) and (B) of the FCA.

### 4. Defendants Improperly Paid Commissions to Employees.

83.     Relator Boyd-Holsinger is personally aware that Suzanne McDowell, who worked in the Admissions Office at Peloton's Arlington Campus, was paid a bonus in February 2017 for meeting or exceeding enrollment targets. In her role as President of that campus, Boyd-Holsinger had occasion to see records showing payment to McDowell of approximately $5,600 above and beyond her salary for that period.

84.     On more than one occasion, Boyd-Holsinger heard McDowell boast about receiving this bonus.

85.     On information and belief, other Peloton employees were paid bonuses or commissions based on their success in admitting, retaining, and/or obtaining federal financial aid for students.

86.     Such payments are violations of 34 C.F.R. § 668.14(b)(22), and thus are also violations of Peloton's Program Participation Agreement, rendering the school ineligible to participate in Title IV Funding. Each certification of compliance that Peloton made was therefore false, and each claim or application for Title IV Funding was a violation of §§ 3729(a)(l)(A) and (B) of the FCA.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

C.      **Retaliation Against Relators**

87.      All three Relators suffered retaliation for their attempts to stop Peloton's fraud.

88.      In January 2018, Matthews voiced her concerns about Dagampat's policy of delaying the processing of Student Status Change Forms. Dagampat denied giving such instructions and began harassing Matthews at work. This retaliation continued even after Dagampat's departure, and Matthews was eventually laid off in September, 2018 for "financial reasons." These actions by Defendants were in violation of § 3730(h) of the FCA.

89.      Following her January 2018 meetings with Van Loon and Rodriguez, Jenson began to question the policies and instructions she had been given regarding student attendance records. After Jenson demanded multiple times that Van Loon justify those policies and instructions, Van Loon stopped talking with her all together. The "freeze out" expanded as others began to worry that Jenson would report her concerns to the TWC. Finally, Jenson was laid off on August 31, 2018, also for "financial reasons." These actions by Defendants were in violation of § 3730(h) of the FCA.

90.      After she refused to alter the placement and retention numbers, on or about October 31, 2018, Boyd-Holsinger was called into a meeting with Strength and Rodriguez and presented with a severance agreement. When she requested time to review the papers, Strength suddenly took them back and Rodriguez offered her an online teaching position instead. This was a demotion with a pay decrease; however, Boyd-Holsinger accepted because she needed the money.

91.      Recently Peloton informed Boyd-Holsinger there were no classes for her to teach. When she filed for unemployment benefits, the school offered her one four-week online class (ten

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

hours per week), for $250 per week. This combination of events amounts to constructive discharge, in violation of § 3730(h) of the FCA.

**E.     Specific False Claims**

92.     Pursuant to a June 2018 internal report, attached hereto as **Exhibit G**, Peloton had not refunded to the Department of Education unearned Title IV Funding for dozens of students who had withdrawn.

93.     In addition to the above, during their tenures at Peloton Relators witnessed the Individual Defendants falsify or direct the falsification of the attendance records of numerous students in order to obtain/retain Title IV funding, including:

   a.   C.F.[26] – April, 2017;

   b.   S.D. – October, 2017;

   c.   M.A. – December, 2017;

   d.   Y.U. – September, 2018; and

   e.   N.S. – April, 2018.

94.     In addition, automated reports attached here as **Exhibit H** show that, as late as June, 2019, the school was not requiring ATB students to attend the online "career pathways" class.

**VII.**
**FIRST CLAIM FOR RELIEF**
**PRESENTATION OF FALSE CLAIMS**
**31 U.S.C. § 3729(a)(1)(A)**

95.     Relators re-allege and incorporate by reference each and every allegation set forth above with the same force and effect as if fully set forth herein.

---

[26] Initials are used to protect the identities of students whose information was falsified without their knowledge. However, Relators have provided the students' complete records, including full names, to the United States.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

96.     As detailed *supra*, at all times relevant herein, Defendants knowingly presented to the Department of Education claims for Title IV Funding for students who had been admitted based on fraudulently administered ATB tests. These claims were factually false.

97.     Moreover, throughout the statutory period, Defendants certified their compliance with applicable laws, regulations, accreditation requirements, and the Department of Education's Program Participation Agreement; however, because of the violations detailed *supra*, Defendants were not in such compliance and the certifications were false. This, in turn, rendered each and every claim for Title IV Funding presented by Defendants during the statutory period legally false.

98.     These false claims were presented at the direction of, and/or with the full knowledge and acquiescence of, the Individual Defendants, in their capacity as principals of Peloton. Alternatively, the Individual Defendants, in their capacity as principals of Peloton, disregarded or were deliberately indifferent to the possibility, indeed the likelihood, that such false claims were being presented.

99.     Each such presentation of a false claim is a separate violation of 31 U.S.C. § 3729(a)(1)(A)

100.    By reason of Defendants' presentation of these false claims, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relators therefore respectfully request an order awarding the United States treble damages plus a civil monetary penalty for each violation and awarding Relators the maximum award permitted under 31 U.S.C. § 3730(d).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## VIII.
## SECOND CLAIM FOR RELIEF
### MAKING OR USING FALSE RECORDS OR STATEMENTS
### TO CAUSE FALSE CLAIMS TO BE PAID
### 31 U.S.C. § 3729(a)(1)(B)

101.    Relators re-allege and incorporate by reference each and every allegation set forth above with the same force and effect as if fully set forth herein.

102.    As detailed above, at all times relevant herein, Defendants knowingly made, used, or caused to made or used false or fraudulent records and/or statements in order to establish and falsely maintain eligibility to receive Title IV Funding, and thereby to (a) induce the payment of Title IV Funding by the United States, and (b) improperly retain that funding.

103.    These false records and statements were made and used at the direction of, and/or with the full knowledge and acquiescence of, the Individual Defendants, in their capacity as principals of Peloton. Alternatively, the Individual Defendants, in their capacity as principals of Peloton, disregarded or were deliberately indifferent to the possibility, indeed the likelihood, that such false records and statements were being made.

104.    But for the making and use of these false records and statements by Defendants, Peloton would have been ineligible to receive Title IV Funding. Thus, the false records and statements rendered false and fraudulent all claims for Title IV Funding submitted by Defendants during the statutory period. Accordingly, Defendants knowingly made and used false records or statements to cause false claims to be paid, in violation of 31 U.S.C. § 3729(a)(l)(B).

105.    The making and using by Defendants of these false records or statements induced the United States, through its agency the Department of Education, to pay thousands of dollars per student to an ineligible institution for an education that many of the students either chose not to receive, or were ill-equipped to benefit from.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

106.    By reason of the false or fraudulent records or statements that Defendants knowingly made and used, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relators therefore respectfully request an order awarding the United States treble damages plus a civil monetary penalty for each violation and awarding Relators the maximum award permitted under 31 U.S.C. § 3730(d).

## IX.
## THIRD CLAIM FOR RELIEF
## MAKING OR USING FALSE RECORDS OR STATEMENTS
## TO AVOID AN OBLIGATION TO THE UNITED STATES
## 31 U.S.C. § 3729(a)(1)(G)

107.    Relators re-allege and incorporate by reference each and every allegation set forth above with the same force and effect as if fully set forth herein.

108.    As detailed above, at all times relevant herein, Defendants knowingly made, used, or caused to be made or used false or fraudulent records and/or statements in order to avoid their obligation to refund "unearned" Title IV Funding to the United States.

109.    These false records and statements were made and used at the direction of, and/or with the full knowledge and acquiescence of, the Individual Defendants, in their capacity as principals of Peloton. Alternatively, the Individual Defendants, in their capacity as principals of Peloton, disregarded or was deliberately indifferent to the possibility, indeed the likelihood, that such false records and statements were being made.

110.    Accordingly, Defendants knowingly made and used false records or statements material to an obligation to refund monies owed to the United States, in violation of 31 U.S.C. § 3729(a)(l)(G).

111.    Each such making or use of a false record or statement is a separate violation of the FCA.

24

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

112.    By reason of the false or fraudulent records or statements that Defendants knowingly made and used, the United States has been damaged, and continues to be damaged, in a substantial amount to be proven at trial. Relators therefore respectfully request an order awarding the United States treble damages plus a civil monetary penalty for each violation and awarding Relators the maximum award permitted under 31 U.S.C. § 3730(d).

## X.
## FOURTH CLAIM FOR RELIEF
## RETALIATION
## 31 U.S.C. § 3730(h)

113.    Relators re-allege and incorporate by reference each and every allegation set forth above with the same force and effect as if fully set forth herein.

114.    Defendants intentionally retaliated against Relators by marginalizing, demoting, and/or discharging them without valid reasons, and by harming their professional and career advancement and potential employment opportunities.

115.    Defendants retaliated against Relators because of their efforts to stop Defendants' fraud, and Defendants had actual and constructive knowledge of such efforts.

116.    Defendants' retaliation has damaged Relators in a substantial amount, including but not limited to personal hardship and economic loss, in an amount to be determined at trial.

117.    Relators therefore respectfully request an order awarding Relators the maximum amount of damages available under 31 U.S.C. § 3730(h)(2) including reinstatement, two times backpay, interest, and special damages.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## XI.
## PRAYER FOR RELIEF

WHEREFORE, Relators respectfully request an Order providing the following relief

against Defendants:

(A)     That Defendants be ordered to cease and desist from violating 31 U.S.C. § 3729;

(B)     That this Court enter judgment against Defendants in an amount equal to the damages the
         United States has sustained due to Defendants' actions, trebled, plus a civil penalty for each
         claim presented, pursuant to 31 U.S.C. § 3729(a) as amended by the Federal Civil Penalties
         Inflation Adjustment Acts of 1990 and 2015;

(C)     That Relators be awarded the maximum amount allowed under 31 U.S.C. § 3730(d);

(D)     That Relators each be awarded reinstatement, two times backpay, interest, and special
         damages under 31 U.S.C. § 3730(h)(2);

(E)     That Relators be awarded all costs of this action, including attorneys' fees and expenses;
         and

(F)     Such other and further relief as this Court deems equitable and just.

## XII.
## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relators demand trial by

jury on all questions of fact raised by the Complaint.

Dated: July 15, 2019                            Respectfully submitted,

                                                **DEAN OMAR BRANHAM SHIRLEY, LLP**
                                                Local Counsel/Attorney-in-Charge

                                                */s/ Charles W. Branham, III*
                                                Charles W. Branham, III
                                                Texas Bar No. 24012323
                                                Federal Bar No. 0198949
                                                302 N. Market Street, Suite 300
                                                Dallas, TX 75202
                                                (214) 722-5990 (office)
                                                (214) 722-5991 (fax)
                                                *tbranham@dobslegal.com*

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

**BROWN, LLC**
Lead Counsel

*/s/ Patrick S. Almonrode*
Patrick S. Almonrode
   (*pro hac vice* application forthcoming)
Jason T. Brown
   (*pro hac vice* application forthcoming)
111 Town Place Square, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855) 582-5297 (fax)
*patalmonrode@jtblawgroup.com*
*jtb@jtblawgroup.com*

*Attorneys for Relators*

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2019, prior to filing, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. Boyd-Holsinger,* et al. *v. Peloton College, LLC* et al., along with written disclosure of substantially all material evidence and information possessed by Relators, to be served via email upon:

Braden Civins,
Assistant United States Attorney
United States Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
*Braden.Civins@usdoj.gov*

I further certify that on July 15, 2019, I caused the same to be served by certified mail upon:

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*/s/ Patrick S. Almonrode*
Patrick S. Almonrode

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

FILED UNDER SEAL PURSUANT TO 31 USC § 3330(b)(2)

RECEIVED
JUL 1 5 2019

CLERK, U.S. DISTRICT COURT
NORTHE(N DISTRICT OF TEXAS

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States ex rel Valerie Boyd-Holsinger, Cassandra Matthews, and Julie Jenson | Peloton College, LLC, Carlos G. Strength, Arthur Rodriguez, Larry Van Loon, Larry A. Jobe, and Larry A. Jobe & Associates, Inc. |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Dean Omar Branham Shirley, LLP
302 N. Market Street, Suite 300, Dallas, TX 75202
214-722-5990

Attorneys *(If Known)*

# 3-19CV-1686L

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC 3729, False Claims Act
Brief description of cause:
federal student financial aid fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE _____ DOCKET NUMBER _____

DATE    07/25/2019

SIGNATURE OF ATTORNEY OF RECORD    */s/ Charles W. Branham, III*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____